# ALVA CARPENTER *et al.*

v.

# HARRIET DAVIS *et al.*

1. TRUST—*express trust created by verbal agreement to buy land for the use of another.* Where a husband agreed, with his wife, that if she would sell land devised to her by a former husband he would invest the proceeds in other land, and have it conveyed to her for the use of her children by her first husband, and she accordingly sold her land, and her husband used the money in payment for land bought by him and conveyed to him, it was *held,* that there was an express trust created in favor of the wife's children by her former husband in the land thus purchased, which could only be avoided by invoking the Statute of Frauds, because it was not declared in writing.

2. SAME—*binding, although verbal, unless the Statute of Frauds is set up.* A defendant is always regarded as waiving the Statute of Frauds, unless he, in some manner, relies on it in his pleading; and on a bill to have a trust declared and enforced, where it appears that the trust was created by verbal agreement, if the defendant fails to set up the statute, he can only contest the fact that the trust was created by verbal agreement, as charged.

3. SAME—*silence of wife not evidence of assent to violation of trust by her husband.* Where a wife sold her separate land upon the agreement of her husband to invest the proceeds in other land in her name, and the husband takes the deed to the other land purchased in his own name, and gives the deed to his wife, her silence will not be regarded as an implied assent to the deed being taken to her husband instead of to herself.

4. SAME—*purchaser of trust property.* A purchaser of trust property, even if he purchases it without notice of the trust and in good faith, can not hold it as against the *cestui que trust,* unless he has paid the purchase money or his notes have been negotiated.

5. SAME—*rents and profits of trust property chargeable to the trustee.* Where a husband and wife convey the land of the wife, and the husband agrees to invest the proceeds in land for the use of the children of the wife by a former husband, the husband has no curtesy in the land thus purchased, and if, in violation of his agreement, he takes the title to himself, a court of equity will enforce the trust in favor of his step-children, and will require him to account for rents and profits, even during the lifetime of the wife.

6. COSTS. In chancery causes the question of costs is in the discretion of the court.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. CHARLES TURNER, Judge, presiding.

Messrs. HARPER & CASSELL, and Mr. S. D. PUTERBAUGH, for the plaintiffs in error.

Messrs. STEVENSON & EWING, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill, filed by the guardian of defendants in error, to have a trust declared and enforced, in their favor, for eighty acres of land. It appears that their mother, Diana Carpenter, had been previously married to one James M. Davis, their father; that prior to his death he made his will, by which he devised to their mother forty acres of land, to hold in fee, as also ten acres in another tract. Mrs. Davis subsequently intermarried with plaintiff in error, Alva Carpenter. As the fruits of the first marriage, three children were born. Alva and his wife sold the forty acre tract devised to her by her former husband for $1500, and a little more than two months afterwards he purchased of one Miller the eighty acre tract in controversy, for the sum of $2600. And it is claimed that the forty acre tract was sold with the express agreement between Alva and his wife, that the proceeds thereof should be used in purchasing other lands in her name, for the use of her children by her first husband. When he received the deed from Miller for the eighty acre tract, it was made to him and not to his wife. When the purchase money was collected for the forty acre tract, it, as Alva himself states, was placed in a pocket book where the common fund of the family was kept, and the custody of which was entrusted to his wife. She, subsequently, died, and Bowen was appointed the guardian of defendants in error. and afterwards brought this suit to recover the land for his wards. It also appeared that Mrs. Carpenter received from the estate of Davis $763.77, as her dower, etc., in his estate.

On the hearing in the court below, on the bill, answers, replication and proofs, the court granted the relief sought, from which this writ of error is prosecuted.

After a careful examination of the evidence, we can see no reason for doubting that Alva Carpenter did agree, with his wife, that if she would sell the forty acre tract of land devised to her by her former husband, he would purchase other lands, in her name, to be held by her for defendants in error ; that he repeatedly said to different persons, he had purchased this land with the proceeds of the sale of the forty acres ; that he took the deed in his own name, instead of that of his wife, to prevent defendants in error from getting any interest in the land. These facts are proved by witnesses who stand unimpeached, and their evidence is clear as to the agreement, or by his admissions that the purchase was so made. We regard the evidence establishing these propositions as being clear and convincing. They are sworn to, in part, by his brother, his sister, and his brother-in-law, besides various other persons.

.  Opposed to this array of disinterested testimony is his unsupported denial and contradiction of their statements. The evidence of these witnesses is consistent with the case and with each other. Even his brother, Reuben, the purchaser of this and Alva's other property, admitted to several different witnesses that the latter had informed him, defendants in error had a claim of $1500 on the land, and this information, we think the evidence shows, was communicated before he purchased. All the evidence tends to establish, almost without doubt, that he made the purchase of this eighty acres in pursuance to an express agreement with his wife, that the forty acre tract should be sold, and the proceeds put into this or other lands, and that they were placed in this in pursuance to that agreement, and it was understood and intended as a trust fund for defendants in error.

It is true, plaintiffs in error contend that all of this evidence was given by persons with whom Alva was at variance. If that were admitted, it would not be ground for rejecting

their testimony. It can not, in the nature of things, be at all probable that eight or ten persons, a portion of them his brother, sister and brother-in-law, would all wilfully perjure themselves, simply because they had ill feelings towards Alva Carpenter. Whilst individuals may be found, occasionally, to so act, we can not presume large numbers of persons will all do so, without an exception. Our experience has not taught us that people are liable to generally so act. It is, no doubt, a ground for scrutinizing evidence closely, and to consider carefully all the surrounding circumstances appearing in evidence, to see if they harmonize with their evidence : but when we have done so in this case, we do not find it impaired by the circumstances attending the case.

The trust being established, shall it be enforced in equity? It is contended that this is not a resulting or implied trust, as the very money received from the sale of the forty acre tract was not paid for it. This is, no doubt, true of a resulting trust, but this is an express trust, and as such it could only be avoided by invoking the Statute of Frauds, because it was not declared in writing; but in this case that statute has not been set up by plea, answer, or in any other mode, in the pleadings. Plaintiffs in error having failed to so urge the defense of the statute, the parol trust may well be established and enforced. In fact, in such a case the court has no discretion to refuse to carry it into effect as it is proved. A defendant is always regarded as waiving the defense of the statute, unless he shall rely on it in some manner in his pleadings. Plaintiffs in error having failed to do so in this case, they can only contest the fact that it was declared by the verbal agreement.

In this case, it is eminently just, and appeals strongly to equitable principles, that the agreement should be executed. Alva had no equitable claim to the property. It had belonged to the former husband of his wife, and had she died it would have descended to her children by both husbands, in equal parts. When the wife agreed that her land might be sold

and invested in this or some other land, the purchase was made in pursuance of an agreement based on an ample consideration, as the wife furnished the money for the purpose. He did not invest his own money in the portion decreed to defendants in error. If he advanced anything individually, it was refunded when he collected his wife's money on the sale of the forty acre tract. He has lost nothing, is liable for nothing, and does not have the shadow of an equitable claim to the interest of the defendants in error to this land, and it would be inequitable and unjust to permit him to hold it. The mere fact that he was the step-father of these children gave him no such claim, and it is the duty of the courts to prevent advantage being taken of the relation to convert the property of the step-children, and appropriate it to the use of the step-parent.

It is urged that Alva swore that he at once placed the deed from Miller for this tract of land in the hands of his wife, and that she made no objections to the fact that the land was conveyed to him and not to her. Even if this were conceded to be true, from the evidence, we should hardly expect that she would have remonstrated, nor can we infer an implied assent from a wife by such silence. It might be, in many cases, prudence would dictate silence, and a want of it would be cause of discord and want of harmony between the husband and wife. It should not be required of her that she at once protest vigorously, and demand that the deed be rectified, and, on the husband failing to do so, bring a suit in equity. If such prompt and vigorous action were required in such cases, we fear that they would generally result in breaking up the family, or at least in destroying its harmony. The relation is not adapted to such altercations, and they should not be required to protect such rights.

It is urged that the evidence fails to show that Alva made a fraudulent conveyance, to avoid the claim of defendants in error. We think the evidence shows that the sale was only colorable; but if it were not, there is no pretense that the

purchase money was paid by Reuben, and having received
the trust property he can not hold it, even if he purchased in
good faith and without notice, unless he has paid the purchase
money or his notes have been negotiated. neither of which
has been shown in this case.    It was a fraud, on the part of
Alva, to convey this trust property, and the court will always,
in such cases, arrest the fraud, unless the purchase money has
been paid by an innocent purchaser, or he is so situated that
the loss must wrongfully fall on him.    But such is not shown
to have been the case here.    The evidence shows that a note
was given for this large sum, and only credited by what is
claimed to have been due from Alva to Reuben, amounting
to from $500 to $700.    There was no error, then, in setting
aside the conveyance, so far as this trust property is involved,
and decreeing it unto defendants in error.

It is urged that Alva had an estate by the curtesy in the
land, and was, therefore, not liable to account for rents and
profits received during his life.    Having married his wife in
1859, before the passage of what is known as the "Married
Woman's Law," of 1861, he acquired the right to receive the
rents and profits during their joint lives, and when living
issue was born of the marriage, he became invested with an
estate by curtesy initiate, depending for its consummation on
his surviving his wife and their not selling the property.    It
then follows, that he was not accountable for the rents and
profits of the forty acre tract before it was sold ; but when he
and his wife conveyed the forty acre tract, he thereby extin-
guished all of his claim to curtesy in the premises, and he
could have none in the money, nor did it revive or attach to
the eighty acre tract purchased subsequently to the passage
of that law with the wife's money.    For this reason he agreed
that the property, when purchased, should be conveyed to
and held by his wife, in trust, for the benefit of the Davis
heirs.

It is urged that the court allowed too large a sum for rents
and profits.    If it be conceded that Alva made improvements

and paid taxes to the extent of $750, which is the sum proved, and he were allowed interest on the share found to belong to defendants in error, being within a fraction of one-fourth of the tract, and they should be allowed $4 per acre, annually, from 1864 until the trial, and interest be allowed them on each year's rent, it will be found to approximate very closely to the amount allowed by the court. If it varies from that amount, it is, perhaps, more than was allowed.

But it is said that rents should not be allowed against Alva during the lifetime of his wife. If the property had been her own, then the proposition might be true, unless she insisted upon receiving them and controling them as her own; but it must be borne in mind that, by agreement between him and his wife, the property became a trust fund, and the *cestuis que trust* were entitled to the rents and profits. Their mother had no power to appropriate them, or to permit others to misapply them, so as to prevent the *cestuis que trust* from recovering them. Alva knew the rents arose from trust property, and should have known that he was misapplying their portion of the rents and profits, and he must account for them.

As to the question of costs in chancery causes, as the statute declares and we have repeatedly held, they are in the discretion of the court, and in the decreeing of costs there was no error.

Perceiving no error in the record for which the decree should be reversed, it is affirmed.

*Decree affirmed.*